IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






WR-60,046-01





 

EX PARTE MELVIN LIGGINS, Applicant




ON APPLICATION FOR A WRIT OF HABEAS CORPUS


CAUSE NO. FO4417-1991-A


FROM NACOGDOCHES COUNTY






 Cochran, J., filed an opinion dissenting from the denial of relief, in which Price,
Johnson, and Holcomb, JJ., joined.


OPINION




 I respectfully dissent to the denial of relief on this post-conviction habeas corpus
petition. Applicant is currently confined in prison for violating a parole condition that
required him to pay for and take a polygraph test as a part of his sex-offender-treatment
parole conditions. However, neither the treatment conditions nor the polygraph requirement
should have been automatically imposed on applicant who was on parole for burglary of a
building, not any sex-related offense.


In 2001, when applicant was placed on parole, the Texas Code of Criminal Procedure
did not authorize a parole board to impose a condition such as paying for a mandatory
polygraph on all parolees, regardless of the nature of the offense for which the inmate was
being released. Rather, the onerous parole conditions associated with sex-offender treatment
could be automatically imposed only if the inmate was required to register as a sex offender
under Article 62.11 of the Code of Criminal Procedure at the time of his release. Under
Article 62.11 as it existed when applicant's parole conditions were imposed in 2001, he was
not required to register as a sex offender. Because the polygraph examination condition was
imposed solely as a result of applicant's improper categorization as a person required to
register as a sex offender, the polygraph examination requirement was improperly imposed. 
Therefore, applicant is entitled to have his parole reinstated without sex offender registration
or sex offender treatment conditions. 

 I.

 Before discussing applicant's facts in relation to the applicable law, a brief look at his
criminal history is in order. Applicant's first contact with the criminal justice system
stemmed from a second-degree-rape offense in 1979. Applicant was nineteen at the time,
did not use a deadly weapon, was arrested immediately, pled guilty seven days later, and was
sentenced to nine years' imprisonment. We know nothing more about the underlying facts. 
In 1983, after serving four years of his sentence, applicant was released on parole. At that
time, the sex-offender registration and treatment statutes did not exist.

 Not long after being released on parole, applicant ran afoul of the law again, although
not in relation to any sexual offense. In 1985, applicant was convicted of burglary of a
habitation with the intent to commit theft. His parole on the rape case was revoked and he
served the remainder of that sentence plus the burglary sentence concurrently. In 1988,
applicant fully discharged both of these sentences.

 For the next three years, applicant's ties to the criminal justice system were no greater
than that of any law-abiding Texas citizen. The state could no more force applicant to attend
and pay for any counseling session, be it sex-, drug-, or alcohol-related, than it could a dewy-eyed kindergarten teacher. 

 However, applicant's problems with the law were not at an end. In 1991, he was
charged with burglary of a building with intent to commit theft. Applicant contended that
the building was an abandoned warehouse within which he sought shelter. Unlike his other
two cases, applicant pled "not guilty" and went to trial. Nevertheless, a jury found him guilty
and sentenced him to fifteen years' imprisonment. 

 In 2001, applicant was released on mandatory supervision, subject to a number of
onerous conditions. (1) Applicant's Certificate of Mandatory Supervision listed each condition. 
The first condition required applicant to register as a sex offender, and the second required
him to participate in a Sex Offender Program. The imposition of the treatment program
condition, despite the fact that applicant's only sexual offense occurred in 1979 and no
record evidence suggests that applicant posed any threat of committing additional sexual
offenses during the intervening twenty-four years, strongly suggests that the parole panel
tacked on the sex-offender-treatment program based solely on applicant's label as an inmate
subject to sex offender registration. 

 Applicant agreed to all of the many other parole conditions except those relating to
sex offender registration and treatment. He refused to sign the form acknowledging
agreement with those conditions. Despite applicant's initial refusal to sign the agreement,
he did follow all the sex offender registration and treatment conditions. And for over a year
he did so, despite the substantial difficulty of finding steady employment because he had to
notify all prospective employers of his status as a registered sex offender enrolled in a sex
offender treatment program. Not surprisingly, no one wanted to hire applicant.

 On November 14, 2003, applicant failed to comply with one condition imposed as part
of the sex-offender-treatment program: he did not pay the $200 cost of a polygraph test. At
the hearing to revoke his parole, applicant offered evidence that he was not financially able
to pay for the polygraph because he did not have a steady job. Four other witnesses testified
on applicant's behalf: 

 a former employer testified that applicant had indeed sought employment, and
that he himself had employed applicant sporadically for lawn maintenance and
general labor;

 

 applicant's brother and girlfriend both testified that they, on different
occasions, had driven applicant to numerous employment interviews, but that
all interviews were unsuccessful because of applicant's registered sex offender
status;


 a pastor testified that he had known applicant for three years, and that
applicant actively participated in church and community activities, performed
free labor for the church, and had always obeyed all of his parole conditions
prior to the demand that he pay for a polygraph exam. 


Nonetheless, the board revoked applicant's parole because he failed to pay for the polygraph
exam. 

II.


Applicant contends that because his 1979 rape conviction was fully discharged in
1988, and the offense for which he was released on mandatory supervision was not a sex-related offense, imposition of the sex offender registration and treatment conditions were
improper, and constituted an ex post facto, equal protection, and due process violation. 
Based upon applicant's writ allegations, this Court ordered the trial court to hold a hearing
and make findings regarding whether applicant was required to register as a sexual offender
as a condition of parole or mandatory supervision for the 1991 burglary of a building offense. 
In response to that order, the trial court found that applicant was required to register as a sex
offender as a condition of mandatory supervision, regardless of the offense for which he was
paroled, because he had a twenty-four-year-old rape conviction. 

 III.

Under Government Code Section 508.186, the Sex Offender Registration statute, a
parole panel shall require as a condition of parole or mandatory supervision that a releasee
be subject to a number of special sex-offender conditions. (2) However, before a parole panel
may impose these conditions, the releasee must be required to register as a sex offender under
Chapter 62 of the Code of Criminal Procedure. (3) That is, only those who are required to
register as sex offenders may be required to comply with the special sex-offender conditions
of parole. 

Under Chapter 62's version in effect at the time the parole conditions were imposed
on applicant, (4) Article 62.11 listed categories of offenders who were required to register as
sex offenders. The article provided that sex offender registration requirements were
applicable only to a person who: (a) had a "reportable conviction or adjudication" occurring
on or after September 1, 1970; and (b) was confined on or after September 1, 1997, for a
"reportable conviction or adjudication" or was under the supervision or control of a
probation, community supervision and corrections department, or paroles divisions, with
respect to a "reportable conviction or adjudication." (5) In other words, Article 62.11 required
a person to register as a sex offender if he had a "reportable conviction or adjudication" after
September 1, 1970, and was still under some form of state supervision imposed because of
that "reportable conviction or adjudication" on or after September 1, 1997. (6)

Article 62.01(5) defines "reportable conviction or adjudication" as a conviction or
adjudication that is one of the ten listed types of offenses, all of which relate to some form
of sexual offense. (7) Of particular significance, one of the listed offenses is burglary. (8) 
However, not all burglary offenses fall into the "reportable conviction or adjudication"
category. Rather, a "reportable" burglary is one punishable under Subsection (d) of § 30.02
of the Penal Code (burglary of a habitation), and committed with the intent to commit a
felony listed in Paragraph (A) or (C) of Article 62.01(5) of the Code of Criminal Procedure. 
Paragraph (A) refers to indecency with a child, sexual assault, aggravated sexual assault, or
prohibited sexual conduct. Paragraph (C) refers to aggravated kidnapping committed with
the intent to violate or abuse the victim sexually. Thus, a burglary is a "reportable conviction
or adjudication" only if it is burglary of a habitation, and the person entered the habitation
with the intent to commit (or did or attempted to commit) a sexual offense. 

Applicant's criminal history did not meet both requirements for application of Article
62.11 sex-offender registration. He did have a "reportable conviction or adjudication"
occurring after September 1, 1970-his 1979 conviction for rape. However, he was not
confined, or under any form of supervision, after September 1, 1997, for a "reportable
conviction or adjudication." When applicant was placed on parole, he was confined for
burglary of a building with the intent to commit theft. Because he did not commit burglary
of a habitation or enter that habitation with the intent to commit one of the specified felony
sex offenses, he does not fall under Article 62.01(5)(D). Nor does he have any other
conviction listed under Article 62.01(5) that qualifies as a "reportable conviction or
adjudication." 

 Therefore, because the offense for which applicant was released on parole did not
qualify as an Article 62.01(5) "reportable conviction or adjudication," he was not
automatically required to register as a sex offender. (9) Because applicant was not required to
register as a sex offender, he should not have been subject to sex offender registration and
treatment requirements absent independent evidence that he posed such a high present risk
of sexual re-offending that imposition of a sex offender treatment program was
constitutionally reasonable and remedial rather than punitive.

 Thus, applicant's parole was revoked based on non-compliance with a condition that
he should not have been subject to absent any showing of a particularized need. Revocation
of parole based on non-compliance with a condition that was wrongfully imposed is no
different than revocation based on non-compliance with a condition that was never imposed. 
Neither is compatible with the federal Constitution or the laws of Texas. 

 Therefore, I would grant applicant's requested relief and reinstate his parole without
sex-offender registration or treatment program conditions. 

Filed: February 8, 2006

Publish
1. The list of nearly thirty conditions included requirements that applicant:

  register as a sex offender under Chapter 62 of the Code of Criminal Procedure; 

  participate in a Sex Offender Program, which required applicant to: enroll in and
participate in a treatment program for sex offenders as directed by the supervising parole
officer; not participate in a volunteer activity or service without prior approval; abide by
additional sex offender condition components to the extent directed in writing by the
supervising parole officer (such as paying for a polygraph test), and notifying prospective
employers of releasee's criminal history;

  not participate in any program that includes participants 17 years of age or younger;

  not become involved in dating, marriage, or platonic relationships with any person who
has children 17 years of age or younger unless approved;

  not enroll in, attend, or enter an institution of higher learning, to include community
college, junior college, university, public or private, or any of their facilities, off-site or
otherwise, unless approved;

  not own, maintain, or operate computer equipment without a declared purpose and
approval;

  not own, maintain, or operate photographic equipment unless approved.
2. Tex. Gov't Code § 508.186.
3. Id.
4. Article 62.11 of the Code of Criminal Procedure was effective from September 1, 1997,
until its amendment and renumbering, effective September 1, 2005. Applicant's parole
conditions were imposed in 2001, when Article 62.11 was still in effect. 
5. Former Article 62.11, Texas Code of Criminal Procedure provided: 

 This chapter applies only to a reportable conviction or adjudication occurring on or after
September 1, 1970 except that the provisions of Article 62.03 and 62.04 of this chapter
relating to the requirement of newspaper publication apply only to a reportable conviction
or adjudication occurring on or after:

 September 1, 1997, if the conviction or adjudication relates to an offense under Section
43.05, Penal Code; or 

 September 1, 1995, if the conviction or adjudication relates to any other offense listed in
Article 62.01(5). 

However, Section 11 of Acts 1997, 75th Leg., ch. 668 (the amendatory statute to Article 62.11)
explains:

 (a) The change in law made by this Act to Article 62.11, Code of Criminal Procedure, as
redesignated and amended by this Act (formerly Subsection (a), Section 8, Article 6252-13c.1, Revised Statutes), applies only to a defendant who, with respect to an offense listed
in Subdivision (5), Article 62.01, Code of Criminal Procedure, as redesignated and
amended by this Act (formerly Subdivision (5), Section 1, Article 6252-13c.1, Revised
Statutes), on or after the effective date of this Act:

 (1) is confined in a penal institution, as that term is defined by Subdivision (3),
Article 62.01, Code of Criminal Procedure, as redesignated and amended by this
Act (formerly Subdivision (3), Section 1, Article 6252-13c.1, Revised Statutes);
or

 (2) is under the supervision and control of a juvenile probation office or an agency
or entity operating under contract with a juvenile probation office, a community
supervision and corrections department, or the pardons and paroles division of the
Texas Department of Criminal Justice. 

(emphasis added). Section 11(b) then states that those defendants who do not fall into
subdivision (1) or (2) are covered by Tex. Rev. Civ. Stat. art. 6252-13c.1,§ 8(a), and that law is
continued in effect for that purpose. That earlier sex-offender registration program law states:
"This article applies only to a reportable conviction or adjudication occurring on or after
September 1, 1991."

 Distilling all that into plain English, we get the following: if an inmate was released from
TDCJ-CID on parole or mandatory supervision in 2001 for a non-sex-related offense (and he was
not otherwise under state supervision for a sex-related offense at that time), he was not subject to
the sex-offender registration or sex-offender treatment requirements if his prior sex-related
conviction or adjudication occurred before September 1,1991. Now that makes eminently good
sense. Society is surely entitled to require sex-offender registration and treatment for those who
pose a serious present risk of sexual re-offending at the time they are released from prison. As
long as such requirements are remedial and protective, not punitive, in nature, they may be
constitutionally enforced retroactively. And the Legislature is surely entitled to make judgments
about how present a "present risk" must be before these requirements fall into the "more punitive
than remedial" side of the scale. In 1997, the Legislature made that decision in Section 11 of the
sex-offender registration amendment to ensure that its statute would pass constitutional muster
by imposing these requirements upon only those who: (1) would commit any sex-related offense
in the future; (2) were presently under state supervision or custody for a sex-related offense
committed on or after 1970; or (3) had been convicted of any sex-related offense after Sept. 1,
1991, but were not otherwise under state supervision. In its 1997 amendment, the Legislature
thus picked a six-year window-Sept. 1, 1991, to Sept. 1, 1997-as its definition of those who
might reasonably pose such a high "present risk" of sexual re-offending that society could
demand that they be automatically subject to the onerous sex registration and sex-offender
treatment programs as a preventative and protective measure. 
6. Admittedly, the language in Section 11 of the amendatory act is convoluted and
infelicitous, but it must be interpreted to apply only to those who both have a reportable
conviction after 1970 and who are presently under state supervision for a reportable offense to
survive an ex post facto challenge. If the amendment were interpreted to automatically apply
sex-offender registration and treatment requirements upon anyone who had any sex-related
conviction after 1970 but who had discharged that sentence and then were under state
supervision for a non-sex-related offense, the registration and treatment requirements would
likely be viewed as punitive rather than remedial. That is, the legislation would be viewed as
punishing those who had at some distant time committed some sex offense, rather than protecting
society from the risk of those who presently posed a danger of sex-offense re-offending. See
Rodriguez v. State, 93 S.W.3d 60, 79 (Tex. Crim. App. 2002) (upholding constitutionality of
1997 amendments to sex-offender registration statute because they were civil and remedial in
nature, not so punitive as to categorize them as penal in nature).
7. Tex. Code Crim. Proc. art. 62.01(5).
8. Id. art. 62.01(5)(D).
9. I do not suggest that a person who is not required to register as a sex offender can never
be required to participate in a sex-offender-treatment program as a condition of probation or
parole. Here, however, imposition of sex-offender-treatment program conditions was based
solely upon applicant's purported status as a person required to register as a sex offender, without
any independent showing that he posed any present risk of committing a sexual offense.